QUESTION PRESENTED AND CONCLUSION
The General Assembly has imposed on all funds invested by the state treasurer a 15% "management fee" on investment earnings. Can the management fee constitutionally be applied to the limited gaming fund?
No. The State Constitution creates the limited gaming fund and prescribes its distribution. The distribution may not be altered by statute. Nor is the management fee a constitutionally authorized expense relating to administration of the fund. Page 1
ANALYSIS
On November 6, 1990, Colorado voters approved a constitutional amendment permitting limited gaming in selected Colorado communities. Colo. Const. art. XVIII, § 9. The amendment also created the Limited Gaming Commission and a limited gaming fund, the fund to be financed from fees paid by gaming licensees. Paragraph (5)(a)(b)(1) of § 9 directs the state Treasurer to pay all ongoing expenses of the Limited Gaming Commission and any other state agency related to the administration of the fund. Paragraph (5)(b)(2) directs that at the end of each state fiscal year, the Treasurer should retain an amount equal to the fund's administrative expenses for the previous two months, and then distribute the balance of the limited gaming fund as follows: 50% to the general fund or such other fund as the General Assembly may designate; 28% to the state historical fund; 12% to the governments of Teller and Gilpin Counties; and 10% to the governments of the cities of Central, Black Hawk, and Cripple Creek.
The implementing legislation for § 9 appears at C.R.S.12-47.1-703. The statutory provisions closely track the constitutional language.
The issue here is whether the constitutional scheme established by § 9 permits the imposition of a 15% management fee on the fund's investment earnings, for services provided by the state Treasurer. The General Assembly has imposed such a fund on all state accounts invested by the Treasurer:
 There is hereby imposed, on every fund or account consisting of state monies invested by the state treasurer, a monthly management fee in the amount of 15% of the investment earnings during the preceding calendar month. The state treasurer shall deduct the fee from the investment income or any other available revenues of the fund or account and shall credit the fee to the general fund.
C.R.S. 24-36-114(2)(a). Subparagraph (c) carves out an exception relevant to this analysis: the fee does not apply "to the highway users tax fund or to any other fund or account wheresuch application would be contrary to the stateconstitution." (emphasis added).
In determining whether the management fee can be applied to the limited gaming fund, it is important that § 9 of art. XVIII dictates the distribution of the entire fund. Money goes first to pay the expenses of the Commission and other state agencies involved in administering § 9, then toward a small retention for reserves, and the balance goes in assigned percentages to the general fund, the historical fund, and to designated local governments. This comprehensive distribution precludes other destinations for any part of the fund. The management fee may be collected only if it fits within one of the constitutionally authorized distributions.
Among those distributions, only payment for expenses of state agencies might justify the fee. However, analysis leads to the conclusion that the management fee should not be viewed as paying an "expense" of the Treasurer's office. This conclusion flows from three considerations. First, the expense clause of the gaming provision is similar to a provision that established the highway users trust fund. The legislature expressly exempted the HUTF, and all other constitutionally protected funds, from the fee. This suggests a legislative understanding that constitutional authorization to pay expenses does not extend to the type of fee imposed here. Second, the meaning of expense is different from the concept of a commission on earnings. Put simply, "expense" refers to an outlay of resources, while the management fee is unrelated to the actual expenses the Treasurer incurs. Third, the factual circumstances of this question reinforce the conceptual differences between expenses and fees based on earnings.
There is strong indication that the General Assembly did not believe the management fee constituted an administrative expense under the Constitution. This conclusion arises because the General Assembly exempted the highway users trust fund from the fee, despite the fact that the constitutional language protecting highway funds expressly provides for the payment of administrative expenses: Proceeds from taxes related to motor vehicles or gasoline, "shall, except for costs ofadministration, be used exclusively for the construction, maintenance, and supervision of the public highways of this state." Colo. Const. art. X, § 18 (emphasis added). The General Assembly apparently concluded that the HUTF, which has an expense clause analogous to that in the limited gaming provisions, was not subject to the management fee. The additional exemption of "any other funds" where the fee would violate the Constitution logically includes the limited gaming fund.
This conclusion finds support in comparing and contrasting the concepts of expenses and of a percentage fee. The commonly understood meaning of expense is an actual outlay of resources, whether cash, labor, or material. Black's Law Dictionary rev. 4th ed. defines expense as "that which is expended, laid out or consumer; an outlay; charge; cost; price." The Colorado Supreme Court has cited with approval Webster's definition of expense: "A using up; consumption; loss; * * * that which is expended, laid out, or consumed; an outlay." Mooney v. Van KleekMortgage Co. 245 p. 348, 349 (Colo. 1926)
In context, a provision that authorizes payment for expenses of state agencies does not alter the ordinary meaning of the word. "Expense" refers to an expenditure or outlay of an agency, and the expense clause protects agencies from a negative fiscal impact as a result of administering the fund: whatever resources an agency expends, it may recoup from the fund.
In contrast, a management fee fixed at 15% of investment earnings is a commission on performance, not discernibly related to the actual expenses of the Treasurer's office. Any correspondence between the fee and the expenses of the Treasurer would be coincidental and subject to the vicissitudes of the market. For example, during rapid market expansion, investments by the Treasurer could garner returns disproportionate to expenses. Conversely, during a market contraction, the office might make substantial and skillful efforts to minimize the state's loss. These efforts could result in increased costs to the Treasurer, but yield no compensation. These possibilities underscore the distinction between expenses and a commission on performance.
Certain circumstances present here support the conclusion that the management fee is unrelated to the expenses of the Treasurer's office. First, the Constitution requires that payment for expenses of administering the limited gaming fund be made only "upon proper presentation of a voucher prepared by the commission in accordance with statutes governing payments of liabilities incurred on behalf of the state." Colo. Const. art. XVIII, § 9(5)(b)(i). No vouchers are prepared in connection with the management fee.[1] Second, the management fee goes not to the Treasurer, but to the general fund. Thus, in addition to having no direct relation to the expenses of the Treasurer's office, revenues from the fee do not replenish the Treasurer's budget. This arrangement further attenuates the management fee from the Treasurer's expenses.
A final issue indirectly implicated by the request for an opinion, but squarely presented by this analysis concerns the Treasurer's ability to claim actual expenses for administration under § 9. The constitution is clear: Upon presentation of a voucher that is prepared by the Limited Gaming Commission, and that conforms to law, (see 24-30-202 C.R.S.) the Treasurer may claim actual expenses.
SUMMARY
Based on the foregoing analysis, this office concludes that the management fee may not be imposed on the limited gaming fund.
Sincerely,
 GALE A. NORTON Attorney General
 SHAWN D. MITCHELL Special Counsel
[1] This fact alone establishes constitutional difficulty in the way the fee currently is collected. However, it would be a simple practice to begin using some form of voucher or service agreement in order to comply with the Constitution. Therefore, the failure to use vouchers, by itself, does not conclusively establish that the fee is not for expenses. It does demonstrate, though, that prior to the time questions arose, the agencies and personnel involved in paying and collecting the fee did not view themselves as operating under the expense clause of § 9.